IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARREN C. BURNS, #1640371,      § | | |
| Petitioner,      § | | |
| § | | |
| v.      § | | 3:13-CV-3870-P-BK |
| § | | |
| WILLIAM STEPHENS, Director      § | | |
| TDCJ-CID,      § | | |
| Respondent.      § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner, a Texas prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, it is recommended that the petition be denied.

**I. BACKGROUND**

Petitioner was convicted of aggravated robbery with a deadly weapon and was sentenced to 25 years' imprisonment. [Doc. 20-2 at 89]. *State v. Burns*, No. F08–54057 (265th Judicial District Court, Dallas County, May 8, 2010), *aff'd*, 05109–00486–CR, 2011 WL 5119442 (Tex. App. – Dallas, Oct. 28, 2011, pet. dism.). The Texas Court of Criminal Appeals denied his state habeas application without written order. *Ex parte Burns*, No. WR-79,615-01 (Tex. Crim. App. Jun. 26, 2013) [Doc. 20-2 at 2]. In this timely federal petition, Petitioner alleges trial and state habeas court errors, ineffective assistance of counsel, prosecutorial misconduct, and due process and speedy trial violations. [Doc. 3 at 6-17]. Respondent argues the petition lacks merit, and Petitioner has filed a reply. [Doc. 16; Doc. 21].

**II. ANALYSIS**

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner bears the burden of establishing that he is entitled to relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet" as the decisions of the state court are reviewed under a "highly deferential standard" and afforded "the benefit of the doubt." Harrington v. Richter, 562 U.S. ---, ---, 131 S. Ct. 770, 786, 788 (2011); Woodford, 537 U.S. at 24 (citation and internal quotation marks omitted). The deferential standard of review applies even where the state court, as in this case, summarily denied the state application without adopting the trial court's findings and conclusions. See Richter, 131 S. Ct. at 785 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

## **State Habeas Error** (Claim 1)

Petitioner challenges the adequacy of the state habeas proceeding, claiming the state court failed to serve him with a copy of the findings of fact and conclusions of law. [Doc. 3 at 6-7]. Infirmities in collateral proceedings, however, are not grounds for federal habeas relief. Rudd v. Johnson, 256 F.3d 317, 319-320 (5th Cir. 2001). Therefore, this claim fails.

## **Surveillance Video and Prosecutorial Misconduct** (Claim 2)

Petitioner asserts he was denied a fair trial because the prosecution failed to obtain and produce an in-store surveillance video, which he maintains would have shown the events in the store as they happened and, thus, proven his innocence. [Doc. 3 at 6-10]. Claiming "the surveillance recording was the primary evidence of whether a crime had been committed or not," Petitioner contends that it "should have been reviewed prior to any charges being filed." [Doc. 3

at 10]. He states "the surveillance recording would have voided any accusations by State Witnesses." [Doc. 3 at 10]. Petitioner also avers that Detectives Gonzalez and Maudlin were aware of the recordings well before the 30- to 45- day expiration date (when the video would be deleted), and yet they "intentionally failed to seek this tape for over two years." [Doc. 14 at 5; Doc. 21 at 4]. Moreover, Petitioner asserts that "[w]ithout the aid of the surveillance video recording [his] defense was greatly hampered, which permitted the prosecution to go unchecked in presenting false testimony, that was material to obtaining a conviction the prosecution knew/or should have known was false." [Doc. 21 at 4].

Petitioner has not established any misconduct by the prosecution in failing to obtain the in-store surveillance video. Detective Gonzalez testified that he was unsuccessful in obtaining the surveillance video through either the store or corporate headquarters. [Doc. 19-1 at 92-95].[1] Although the prosecution initially claimed there never was a video recording because the video system was only monitoring [Doc. 17-1 at 4], it only later determined that the video was destroyed forty-five days after the offense. [Doc. 17-1 at 1-2].[2] However, Petitioner has offered only surmise and no proof whatsoever that the delayed discovery was intentional and not the result of a mistake as the prosecution contended. Without evidence in the record, "a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Moreover, to the extent Petitioner alleges a *Brady* violation, his claim fails for the same reason -- he has not established that the prosecutor suppressed or withheld the surveillance recording. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (to establish a Brady violation, a petitioner must prove (1) the

---

[1] Vol. 4 of Reporter's Record.
[2] Missing pages of Vol. 3 of Reporter's Record.

prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to his guilt or punishment).

Petitioner has not shown that the state court's decision to deny his prosecutorial misconduct claim was contrary to, or involved an unreasonable application, of clearly established federal law.  Accordingly, this ground should be denied.[3]

### Ineffective Assistance of Counsel (Claim 3)

Next, Petitioner raises various claims of ineffective assistance of counsel.  The Court reviews ineffective assistance of counsel claims under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'"  *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1403 (2011) (quoted cases omitted).  In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter*, 562 U.S. ---, ---, 131 S. Ct. 770, 785 (2011).

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland,* 466 U.S. at 687.  The Court need not address both components if the petitioner makes an insufficient showing on one.  *Id.* at 697.  To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness."  *Id.* at 689.  In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct

---

[3] Contemporaneously with this order, the Court denies Petitioner's motion to issue a Subpoena Duces Tecum ordering the Family Dollar Store Corporation (the owner of the store where the aggravated robbery occurred) to produce the electronically-stored back-up of the surveillance video. [Doc. 22 at 3].  Petitioner has offered no evidence to rebut the testimony in the trial court that the surveillance recording was destroyed long ago.

fell within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, Petitioner cannot show that counsel's performance was deficient and that it prejudiced him. His contention that counsel failed to investigate is unsupported and conclusory. *See Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000) (allegations of a counsel's failure to investigate must include with specificity what the investigation "would have revealed and how it would have altered the outcome of the trial").

Petitioner asserts that counsel failed to conduct an independent investigation and acquaint himself with the facts of the case, including obtaining the surveillance video. [Doc. 3 at 11]. He maintains the surveillance video was "crucial to the defense" because it would have refuted the charge and allowed counsel to discover that Delossantos and Nobles "fabricated evidence" and "concocted . . . false allegations." [Doc. 3 at 12]. However, the record reveals that defense counsel did attempt to procure the surveillance video, but that he, just like the police and the prosecutor, was unsuccessful. [Doc. 20-2 at 60].

Moreover, even assuming counsel was deficient in waiting until mid-2009 (about six months after he was first appointed) to request the surveillance video [Doc. 21 at 16; Doc. 20-2 at 60], Petitioner cannot demonstrate that he was prejudiced -- namely that there is a reasonable probability that the result of the proceeding would have been different. The uncontroverted evidence in the record establishes that the surveillance recording was destroyed 30 to 45 days following the relevant events – long before counsel's appointment. Thus, even if counsel had

attempted to obtain the recording immediately upon his appointment, that attempt would be futile.[4] Moreover, the state court of appeals concluded that Delossanto and Nobels' eye-witness testimonies, which contradicted Petitioner's version of the events as alleged in his habeas pleadings, were sufficient to sustain his aggravated robbery conviction. Thus, Petitioner presents only conclusory assertions that he was prejudiced. *See Ross*, 694 F.2d at 1011 ("mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *West v. Johnson*, 92 F.3d 1385, 1399-1400 (5th Cir. 1996) ("the court need not blindly accept speculative and inconcrete claims") (quoted case omitted).

Next, Petitioner maintains that counsel was ineffective in failing to interview Officer Antonio Hudson, who prepared the incident report, and Officer Dineen C. Corden, who photographed a bottle of STP found outside the store after Petitioner's arrest. [Doc. 3 at 12-13]. However, he fails to present any evidence that the officers' testimony would have been favorable to him. Although Petitioner seeks to put his own spin on the evidence observed by Officers Corden and Hudson, it does not refute the trial testimony of the eyewitnesses, Delossanto and Nobels. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (to demonstrate the requisite *Strickland* prejudice, a habeas petitioner must show not that witness would have testified at trial and that the testimony would have been favorable) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). And while Petitioner contends counsel failed to challenge

---

[4] In his reply, Petitioner asserts for the first time that the state habeas court failed to request an affidavit from his first court-appointed counsel, Anne Marie Gillispie. [Doc. 21 at 13, 16]. As noted previously, however, infirmities in collateral proceedings are not grounds for federal habeas corpus relief. *See Rudd v. Johnson*, 256 F.3d 317, 319-320 (5th Cir. 2001). Moreover, insofar as Petitioner seeks to assert ineffective assistance of counsel with respect to Ms. Gillispie, his claim is unexhausted and meritless. The same applies to his claim of "abandonment," asserted for the first time in his Motion for Subpoena Duces Tecum. [Doc. 22 at 4]. Because Petitioner sought the withdrawal of Ms. Gillispie due to a fundamental disagreement in July 2008, shortly after her appointment, it is unlikely that she had sufficient time to request the surveillance video. [Doc. 18-2 at 10-11].

inconsistencies in the evidence [Doc. 3 at 13], he does not detail the purported inconsistencies or explain what type of objection counsel could have raised. *See Ross*, 694 F.2d at 1011 ("mere conclusory allegations do not raise a constitutional issue in a habeas proceeding).

Petitioner cannot overcome the strong presumption that he received effective assistance of counsel at trial. The state court's denial of relief on these grounds was a reasonable application of federal law. Accordingly, these claims lack merit.

### **Trial Court Errors** (Claims 4 & 7)

Petitioner challenges the denial of the defense's motions in limine and for a continuance. [Doc. 3 at 11, 17]. Even assuming a constitutional trial error stemming from the denial of the above motions, Petitioner has not shown a "substantial and injurious influence or effect" on the jury verdict stemming from the denial of those motions. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (holding a constitutional error is cause for federal habeas relief only if it has a "substantial and injurious effect or influence in determining the jury's verdict."). First, he contends the trial judge "abused his discretion in denying the Motion in Limine," and references only the discussion on the record of the State's motion in limine, which the court actually granted. [Doc. 3 at 14; Doc. 19-1 at 5]. That fact notwithstanding, Delossanto's deferred adjudication probation was the subject of the motion in limine, and both the prosecution and the defense questioned her about it. [Doc. 19-1 at 8, 23-24]. Moreover, contrary to Petitioner's assertion that the trial judge "gagged the defense from questioning" Delossanto about the issuance of a probation violation warrant for her arrest, which Petitioner suggests was dismissed in exchanged for her testimony, defense counsel <u>began</u> his cross examination of Delossanto with that very subject. [Doc. 19-1 at 24]. Likewise, while Petitioner claims that a continuance would have permitted his counsel to obtain the surveillance video, he fails to demonstrate that the video

even existed at that time, indeed, his other arguments as previously recounted herein, suggest that it ceased to exist long before his trial. Thus, Petitioner has failed to establish error on either point.

The state court's denial of these grounds was a reasonable application of federal law. Accordingly, Petitioner's claims 4 and 7 fail.

### **Speedy Trial (Claim 5)**

Petitioner also asserts a speedy trial violation stemming from the near two-year delay between his April 8, 2008 arrest and his April 6, 2010 trial.[5] [Doc. 3 at 15]. In reviewing a speedy trial claim, the Court balances four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. *Barker v. Wingo,* 407 U.S. 514, 530 (1972) (speedy trial right applies to state criminal proceedings through the Fourteenth Amendment). In this case, it is evident, after balancing these factors, that Petitioner's right to a speedy-trial was not infringed.

A two-year delay is insufficient to warrant a presumption of prejudice. *See Amos v. Thornton,* 646 F.3d 199, 206–207 (5th Cir. 2011) (reasoning that a delay of less than thirty months precludes the first *Barker* factor from "strongly favor[ing] the accused"); *Goodrum v. Quarterman,* 547 F.3d 249, 260 (5th Cir. 2008) (noting that a presumption of prejudice from delay alone "applies only where the delay is at least 5 years"). And while Petitioner maintains the prosecution intentionally prolonged his case "in bad faith and with vindictive intent," and "with-held knowledge of the surveillance tape's existence" [Doc. 3 at 15], the record does not reflect any dilatory tactics by the Government. Moreover, Petitioner's request for new court-

---

[5] *See United States v. Greer,* 655 F.2d 51, 52 (5th Cir.1981) ("The constitutional assurance of a speedy trial attaches upon arrest, return of an indictment, or filing of an information, whichever first occurs.").

appointed counsel in July 2008 contributed the delay [Doc. 18-2 at 10]; as did the subsequent request by his newly-appointed counsel of a continuance to locate defense witness Angela Bennett. [Doc. 18-2 at 52].

Furthermore, the record reflects that Petitioner never asserted his right to speedy trial. *See Barker*, 407 U.S. at 532 (the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."). Finally, Petitioner has made no showing whatsoever that he suffered prejudice from the delay in this case. While he asserts that the delay contributed to counsel's inability to locate the surveillance video, he cannot show (for the reasons previously noted) that the video would have affected the outcome of his case. Vague and conclusory allegations are clearly insufficient to prove the prejudice required to support a speedy trial claim. *See Goodrum,* 547 F.3d at 262. Accordingly, because the state court's denial of relief on this ground was reasonable, this claim fails.

### **Perjury** (Claim 6)

Lastly, Petitioner contends that the prosecution suborned perjury by calling witnesses Nobles and Delossantos, and that "the surveillance tape would have disclosed [this] fraud upon the court." [Doc. 3 at 16]. He maintains "no credible evidence [was] presented that a crime was committed, other than what was vindictively fabricated by Delossantos and Nobles." [Doc. 3 at 16]. He also asserts that "[t]he surveillance tape was intentionally deleted to cover up this fraud presented before the Court." [Doc. 3 at 16].

Petitioner has not shown that the state court's denial of this claim was either contrary to, or involved an unreasonable application, of clearly established federal law. He has provided no proof in support of his claim apart from his conclusory allegations. Again, without evidence in the record, "a court cannot consider a habeas petitioner's bald assertions on a critical issue in his

*pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross*, 694 F.2d at 1011.  Moreover, Petitioner has not established that any false or misleading testimony/evidence was admitted at trial.  *See Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972)) (to prove a Due Process Clause violation based on the state's reliance on false testimony, the defendant must establish: "(1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false."); *see also Napue v. Illinois*, 360 U.S. 264, 269, 271 (1959).  That he disputes the witnesses' account of the events is of no moment.  Accordingly, this claim has no merit.

## Evidentiary Hearing Not Required

Petitioner requests an evidentiary hearing.  [Doc. 3 at 11; Doc. 22 at 4].  However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct. at 1398; *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2).  Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court.  As discussed above, Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court.  Therefore, Petitioner is not entitled to a federal evidentiary hearing.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

SIGNED April 24, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE